COURT OF APPEALS
DECISION
DATED AND FILED

September 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP271-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF353

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

KEITH X. HOFFMAN,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Portage County: THOMAS B. EAGON, Judge. *Reversed and cause remanded for further proceedings*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals a circuit court judgment dismissing a criminal complaint charging Keith Hoffman with stalking under WIS. STAT. § 940.32(2) (2019-20).[1] The court had previously dismissed an earlier complaint after declining to find probable cause at the preliminary hearing. The sole issue we decide is whether the allegations in the new complaint are sufficient to establish probable cause that Hoffman committed the stalking offense charged. We agree with the State that the allegations are sufficient. Accordingly, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

## *Background*

¶2 In June 2020, the State filed a complaint charging Hoffman with stalking "Harriet" in violation of WIS. STAT. § 940.32(2).[2] As relevant here, the elements of stalking are, in summary form: (1) the defendant engaged in an intentional course of conduct directed at a particular person; (2) the course of conduct would have caused a reasonable person in the same circumstances to suffer serious emotional distress; (3) the defendant's acts caused the person to suffer serious emotional distress; and (4) the defendant knew or should have known that one or more of the acts would have this effect. *See* § 940.32(2); WIS JI—CRIMINAL 1284.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The parties use the pseudonym "Harriet," and so shall we. *See* WIS. STAT. RULE 809.86(4).

¶3 The circuit court held a preliminary hearing on the June 2020 complaint and, at the conclusion of the hearing, declined to find probable cause. That case was dismissed.

¶4 The State filed a new complaint that included the allegations from the original complaint and additional allegations. According to the allegations, Harriet reported to police that Hoffman had been stalking her for approximately three years. Harriet said that Hoffman would sit and watch her while she worked at the YMCA, where he was a member; that Hoffman would send her messages and pictures through social media "every day," including pictures of his penis "[m]any times"; that in one instance, his penis had a ruler drawn on it; and that Hoffman once showed up at Harriet's dorm room uninvited. There were also allegations that Hoffman became angry at Harriet for talking to other males at work, and that he asked her, "why the fuck are you talking to other guys?" In addition, Hoffman attempted numerous times to hack into Harriet's student email account.

¶5 The complaint also included allegations that Harriet tried to ignore Hoffman's communications, but felt she had to be civil to him due to her job at the YMCA. Harriet accepted Hoffman's social media invitations because she did not want to get in trouble at work for being rude to Hoffman in light of his status as a YMCA member. When Harriet tried to delete Hoffman from her accounts, he "made a huge deal of it at the YMCA," so she added him back. On one occasion, when Harriet was talking to a coworker about Hoffman, Hoffman became very angry and started yelling and swearing at Harriet.

¶6 Additionally, the complaint included new allegations relating to a restraining order entered against Hoffman at the request of Harriet. It contained

several paragraphs alleged to be excerpts from Harriet's application for a temporary restraining order against Hoffman. Several of the allegations provided further details regarding Hoffman's conduct and Harriet's reactions to his conduct. Harriet alleged that Hoffman yelled at her at work for talking to coworkers after she blocked him on social media, and that she added him back to her social media "to keep the peace." Harriet also alleged: "He started sending me dick pictures, one time he even drew a ruler on his penis. I told him to stop. I received a 'snap' from him asking me to 'suck his cock.' I got fed up and permanently blocked him on everything." Harriet further alleged that, after she learned of Hoffman's attempts to hack into her school account, she cried and felt "extremely uncomfortable" and "made myself sick from all the stress." She met with the dean of students at her university and had to obtain new accounts and a new cell phone number.

¶7     Hoffman moved to dismiss the new complaint. He argued that the complaint allegations failed to establish probable cause to support a stalking charge. He argued in the alternative that dismissal was appropriate under WIS. STAT. § 970.04.[3] The circuit court granted Hoffman's motion and dismissed the new complaint.

## *Discussion*

¶8     The State argues that the circuit court erred in dismissing the new complaint. The State contends (1) that the complaint established probable cause

---

[3] WISCONSIN STAT. § 970.04 provides that, "[i]f a preliminary examination has been had and the defendant has been discharged, the district attorney may file another complaint if the district attorney has or discovers additional evidence."

that Hoffman committed the stalking crime charged, and (2) that the complaint included new evidence and was therefore permissible under WIS. STAT. § 970.04.

¶9 Hoffman now concedes that the new complaint was permissible under WIS. STAT. § 970.04. Hoffman contends, however, that the circuit court properly dismissed the complaint for lack of probable cause.

¶10 Accordingly, the sole issue we decide is whether the allegations in the new complaint are sufficient to establish probable cause that Hoffman committed a stalking offense under WIS. STAT. § 940.32(2). For the reasons that follow, we conclude that the allegations are sufficient.

¶11 "The sufficiency of a complaint is a matter of law that we review de novo." *State v. Barman*, 183 Wis. 2d 180, 201, 515 N.W.2d 493 (Ct. App. 1994). "A complaint is sufficient when the alleged facts, together with reasonable inferences drawn from them, allow a reasonable person to conclude that a crime was probably committed by the defendant." *Id.* We address only whether the complaint allegations establish probable cause, not "whether the facts as pleaded would establish guilt according to some higher standard." *See State v. Grimm*, 2002 WI App 242, ¶20 n.6, 258 Wis. 2d 166, 653 N.W.2d 284.

¶12 The applicable stalking statute provides that "[w]hoever meets all of the following criteria is guilty of a Class I felony" stalking offense:

> (a) The actor intentionally engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household.
>
> (b) The actor knows or should know that at least one of the acts that constitute the course of conduct will cause the specific person to suffer serious emotional

distress or place the specific person in reasonable fear of bodily injury to or the death of himself or herself or a member of his or her family or household.

(c) The actor's acts cause the specific person to suffer serious emotional distress or induce fear in the specific person of bodily injury to or the death of himself or herself or a member of his or her family or household.

WIS. STAT. § 940.32(2).

¶13    As noted above, the elements of stalking under this statute, as relevant here, can be summarized as follows: (1) the defendant engaged in an intentional course of conduct directed at a particular person; (2) the course of conduct would have caused a reasonable person in the same circumstances to suffer serious emotional distress;[4] (3) the defendant's acts caused the person to suffer serious emotional distress; and (4) the defendant knew or should have known that one or more of the acts would have this effect. *See* WIS. STAT. § 940.32(2); WIS JI—CRIMINAL 1284.

¶14    "Course of conduct" in this context means "a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose," including, as most relevant here, any of the following acts:

1. Maintaining a visual or physical proximity to the victim.

2. Approaching or confronting the victim.

3. Appearing at the victim's workplace or contacting the victim's employer or coworkers.

4. Appearing at the victim's home ….

---

[4] The statute provides that "'[s]uffer serious emotional distress' means to feel terrified, intimidated, threatened, harassed, or tormented." *See* WIS. STAT. § 940.32(1)(d).

....

      7.  Sending material by any means to the victim ....

WIS. STAT. § 940.32(1)(a).[5]

---

[5] WISCONSIN STAT. § 940.32(1)(a) provides in full:

      (a)  "Course of conduct" means a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose, including any of the following:

      1.  Maintaining a visual or physical proximity to the victim.

      2.  Approaching or confronting the victim.

      3.  Appearing at the victim's workplace or contacting the victim's employer or coworkers.

      4.  Appearing at the victim's home or contacting the victim's neighbors.

      5.  Entering property owned, leased, or occupied by the victim.

      6. Contacting the victim by telephone or causing the victim's telephone or any other person's telephone to ring repeatedly or continuously, regardless of whether a conversation ensues.

      6m. Photographing, videotaping, audiotaping, or, through any other electronic means, monitoring or recording the activities of the victim. This subdivision applies regardless of where the act occurs.

      7. Sending material by any means to the victim or, for the purpose of obtaining information about, disseminating information about, or communicating with the victim, to a member of the victim's family or household, or an employer, coworker, or friend of the victim.

      8. Placing an object on or delivering an object to property owned, leased, or occupied by the victim.

      9. Delivering an object to a member of the victim's family or household or an employer, coworker, or friend of the victim or placing an object on, or delivering an object to,

(continued)

7

¶15 "These acts, in and of themselves, are not crimes." *See* ***State v. Hemmingway***, 2012 WI App 133, ¶6, 345 Wis. 2d 297, 825 N.W.2d 303. Rather, "[t]hese are legitimate acts which could become part of the stalking course of conduct if they show a continuity of purpose and satisfy the elements of the crime." ***Id.***

¶16 Hoffman argues that the allegations in the new complaint do not establish probable cause to support two of the four elements of stalking under WIS. STAT. § 940.32(2). Specifically, Hoffman argues that the allegations are insufficient to establish probable cause for the first and fourth elements: that he intentionally engaged in a course of conduct showing a continuity of purpose, and that he knew or should have known that one or more of his acts would cause Harriet to suffer serious emotional distress. We reject these arguments.[6]

¶17 As to the first element, Hoffman contends that his alleged acts do not show a course of conduct with a continuity of purpose. Hoffman argues that the acts occurred over the course of a few years and "do not support a conclusion that this was anything but a typical, if rocky, attempt … to form a relationship or friendship with Harriet." We disagree.

---

property owned, leased, or occupied by such a person with the intent that the object be delivered to the victim.

10. Causing a person to engage in any of the acts described in subds. 1. to 9.

[6] Hoffman does not appear to dispute that the allegations in the new complaint are sufficient to establish probable cause for the second and third elements, namely, that his course of conduct would have caused a reasonable person in Harriet's circumstances to suffer serious emotional distress, and that his actions caused Harriet to suffer serious emotional distress. Regardless, we agree with the State that the allegations are sufficient as to these elements.

¶18    First, the statute expressly provides that the course of conduct may be "carried out over time, however short or long." *See* WIS. STAT. § 940.32(1)(a). Second, Hoffman's alleged acts are reasonably viewed as showing a continuity of purpose in which Hoffman repeatedly targeted Harriet with unsolicited sexual overtures and harassing conduct. We take into account Hoffman's entire course of conduct but conclude that several of his alleged acts are particularly relevant. To summarize the most pertinent allegations and reasonable inferences therefrom, Hoffman yelled and swore at Harriet at her workplace, either because she was talking to coworkers about him or because she had blocked him on her social media accounts; Hoffman repeatedly sent Harriet unwanted pictures of his penis, including one in which a ruler was drawn on it; and Hoffman continued to send Harriet pictures of his penis, along with the "snap" asking her to "suck his cock," even after she had "told him to stop."[7]

¶19    As to the fourth element, the question is whether the allegations in the complaint show probable cause that Hoffman knew or should have known that "at least one of the acts that constitute the course of conduct will cause [Harriet] to suffer serious emotional distress." *See* WIS. STAT. § 940.32(2)(b). Hoffman argues that the complaint allegations are not sufficient on this element because the allegations show that Harriet was outwardly friendly toward him based on her work obligations. Hoffman asserts that this "obscured his ability to know that she was experiencing emotional distress." He further asserts that the complaint allegations show no indication that his behavior was bothering Harriet prior to the

---

[7] As referenced above, the new complaint included the following allegations by Harriet: "He started sending me dick pictures, one time he even drew a ruler on his penis. I told him to stop. I received a 'snap' from him asking me to 'suck his cock.' I got fed up and permanently blocked him on everything."

time that she permanently blocked him on her social media accounts. For all of these reasons, Hoffman argues that the complaint allegations do not show probable cause on the knowledge element.

¶20 We reject Hoffman's argument. Although some of the complaint allegations support a conclusion that Harriet was generally friendly toward Hoffman due to her work obligations, Hoffman does not persuasively argue that he did not know that yelling and swearing at someone at his or her workplace would cause the person to feel emotional distress. In addition, the other allegations that we have already discussed separately support a reasonable inference that Hoffman should have known that one or more of his alleged acts would cause Harriet serious emotional distress. Hoffman's argument ignores the allegations supporting a reasonable inference that he continued to send Harriet unwanted pictures of his penis, and at least one lewd message, even after Harriet told him to stop.

¶21 In sum, for the reasons stated above, we reverse the circuit court's judgment of dismissal and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.